## STROMAN v. VARN.

1. One partner may bind his copartners by deed if the others are present and authorize it, or if authority to do so is fairly inferable from the evidence of their conduct and course of business.
2. There were four partners in a saw-mill, two of whom owned the land. One of the others mortgaged the land in the name of the four and signed the firm name. *Held,* that the mortgage was a valid lien on the land, the two owners having received the consideration and in many ways acknowledged and ratified the mortgage.
3. A purchaser of the interest of one of the owners, in both land and partnership, after record of the mortgage, held bound by its lien.

Before KERSHAW, J., Hampton, October, 1881.

The opinion states the case. The Circuit decree, omitting its statement, was as follows :

From these circumstances I find, as matter of fact, that the execution of the mortgage in question was authorized by James G. Varn, Gabriel Varn, and that the same is a good, valid and satisfactory mortgage of the land and other property described therein ; that Malcolm V. Wood acquired his interest therein affected by notice and subject to the encumbrance of said

mortgage. When it is considered that the mortgage was so long acted upon by all the parties concerned, and so solemnly and repeatedly recognized and affirmed as a good and valid transaction; that the steam mill, which constituted the principal effective agent of the business, was included with the land upon which it was located in the same mortgage, which was duly recorded; and that the land was then dealt with by the owners as if it were partnership property of the firm, I cannot hesitate as to these findings of fact.

When Wood purchased his interest in the mill he was affected with notice of the mortgage thereof, which was duly recorded— the recording being constructive notice. It was notice of all that the deed contained, and, therefore, notice of the mortgage of the land as the property of the firm. If made with the authority of the legal owners of the land, as presumably it was (and as it is now known to have been), it is in law a good and valid mortgage, because the owners, in that case, would be estopped to deny it. *Story Eq. Jur.*, § 385. It purported to be a valid mortgage. It was capable of being shown to be a valid mortgage, and, therefore, Wood, having taken with notice of such a mortgage, he takes subject to its encumbrances where it is shown to be a valid mortgage.

Again, the possession of the land and its use for the purposes of the partnership was notice that it was being dealt with as partnership property, for possession is notice. *Massey* v. *McIlwain*, 2 *Hill Ch.* 427. *Prima facie*, it was partnership property, and, but for the admission that it was not actually so, it would have been so held, in accordance with the case of *Winslow* v. *Chiffelle, Harp. Eq.* 25, where the circumstances were similar.

The general rule is, that one copartner has no power to bind his copartners by deed, but there are many exceptions. Chancellor Kent says (volume III., page 48): "An absent partner may be bound by a deed executed on behalf of the firm by his copartner, provided there be either a previous parol authority or a subsequent parol adoption of the act. Such authority need not be under seal, nor in writing, nor specially communicated for the purpose, but may be inferred from the partnership itself and from the subsequent conduct of the copartners implying

an assent to the act." *Grame* v. *Seton*, 1 *Hall* 262, cited in *note* 7. This doctrine has been affirmed by the New York Court of Appeals. *Smith* v. *Kerr*, 3 *Comst.* 144. Judge Story lays down the same doctrine in his work on Partnership, section 120.

Counsel at bar cited also the case of *Lawrence* v. *Taylor*, 5 *Hill* (*N. Y.*) 107, to the effect that a contract to convey lands belonging to two partners, executed in the name of the firm by one of them, is binding on the firm if done under a previous authority, or if the act be subsequently ratified by the other. In the case of *Saunders* v. *Hughes* (not reported), cited by Judge O'Neall in *Fleming* v. *Dunbar*, 2 *Hill* 532, and affirmed in *Fant* v. *West*, 10 *Rich.* 149, and the *Bivingsville Man. Co.* v. *Bobo*, 11 *Id.* 386, the law of the State is declared, that a deed executed by several copartners, by the authority of the others, is valid, and authority may be gathered from any circumstances which create the belief that the absent partners knew of the deed and intended to be bound by it. The law is differently stated elsewhere, but these cases show that here the principle is settled, that such a mortgage as this binds the land to the same extent as if it were the property of the firm.

It follows from this that a subsequent purchaser takes subject to the mortgage, when it has been, as here, duly recorded.

It is ordered and adjudged that it be referred to the clerk of the court to ascertain and report to the court the amount remaining due upon the note secured by the said mortgage; that the plaintiffs have judgment for the sale of said mortgaged premises in satisfaction of the amount which may be found due them, and the costs of this action and for any deficiency that may be left after applying thereto the proceeds of such sale; and that the defendants, and all persons claiming under them, be forever barred and foreclosed of any equity of redemption in the said mortgaged premises, and that plaintiffs have leave to apply at the foot of this judgment at chambers for the confirmation of the report herein directed, and for the sale of said premises, and for such other and further orders as may be necessary to carry the same into effect; that the judgment for any deficiency go only against the defendants, James G. Varn, Gabriel Varn and

Josiah Preacher, surviving partners of the late firm of Varns & Preacher.

*Messrs. Howell & Murphy,* for appellants.

*Mr. C. J. C. Hutson,* contra.

April 5th, 1883.   The opinion of the court was delivered by MR. JUSTICE McGOWAN.   This was an action to foreclose a mortgage on a tract of land in Hampton county, known as the "Ellis land," containing 1,157 acres.   It seems that L. B. Varn, James G. Varn, Gabriel Varn and Josiah G. Preacher formed a partnership in the lumber business, under the name and style of "Varns & Preacher;" that they wanted money to build a steam mill, and for that purpose contracted to borrow $2,500 from John D. Stroman, the testator of plaintiffs, and on December 8th, 1870, L. B. Varn, the active member of the concern, executed and delivered to the said Stroman a note, of which the following is a copy:

"$2,500.—By the first day of January, 1872, we promise to pay John D. Stroman the sum of two thousand five hundred dollars, for value received, with interest from date, twelve per cent. per annum.   Witness our hand and seal this 8th day of December, 1870.
(Signed,)                  "VARNS & PREACHER. [SEAL.]"

And, in order to secure said note, the said L. B. Varn, on the same day and in the same manner, signed a mortgage of the aforesaid tract of land.   At that time the title to the land was in James G. Varn and Gabriel Varn, who had given no written authority to the said L. B. Varn to execute the mortgage; but there is reason to believe that it was done with their knowledge and consent, the mortgage stating that "we, L. B. Varn, James G. Varn, Gabriel Varn and Josiah G. Preacher (under the name and style of Varns & Preacher), do grant," &c., and including other property, in these words: "together with a steam mill that we are about erecting on said land," &c.   The mill was built, and the business of the firm there conducted.   Preacher afterwards sold his interest in the business to one Malcolm V.

Wood, who took his place in the firm, and on January 4th, 1872, the two partners who had legal title to the land, conveyed by deed, for valuable consideration, one-fourth interest in the same to the said Wood, and another one-fourth interest to L. B. Varn, making the four partners equal in the land, as they were in the business. In 1874 Wood died intestate, leaving as his heirs-at-law his widow, Rebecca A. Wood, and two children, James L. and Mary M. Wood, who are parties defendant, and in 1878 L. B. Varn died intestate, leaving a widow, Mary Varn, and six children, all of whom are also parties, but did not answer the complaint.

Credits appear upon the note, $500 on January 1st, 1872, and $1,600 March 2d, 1875, leaving a balance still due and unpaid. James G. Varn wrote letters to John D. Stroman in his lifetime, and after his death to his widow executrix, fully recognizing the mortgage as a valid instrument; and L. B. Varn, after Wood came into the firm, wrote many letters in the name of the new firm, Varns & Wood, asking indulgence, and otherwise recognizing the validity of the mortgage. On March 1st, 1876, L. B. Varn, James G. Varn, Gabriel Varn and Rebecca Wood joined in making a deed to plaintiff's testator, conveying to him absolutely the mortgaged premises, in consideration of $1,771.04, with the understanding that he was to sell the property and pay the balance due on the mortgage, and turn over the remainder to the said parties; but it does not appear that these papers were ever delivered or acted upon.

John D. Stroman died in 1877, leaving a will, of which the plaintiffs are executors, who brought this action to foreclose the mortgage on the afore-mentioned tract of land, for the payment of the balance due upon the note. James G. Varn and Gabriel Varn answered, claiming that the tract of land was their individual property, and not that of the firm of Varns & Preacher, when the mortgage was signed by L. B. Varn, and also denying that the act of L. B. Varn in signing the sealed note and mortgage in the name of "Varns & Preacher" was the act of the four partners, including themselves. And Rebecca A. Wood answered, denying that her husband, Malcolm V. Wood, in purchasing the share of Preacher, acquired any interest in said land,

but that he purchased one-fourth interest from James G. and Gabriel Varn after the alleged mortgage was executed, and that he was purchaser for valuable consideration without notice of any encumbrance thereon.

The cause came on to be heard by Judge Kershaw, who gave judgment of foreclosure against all the parties, and they appeal to this court upon the following grounds: " 1. For that his Honor erred in holding that the mortgage mentioned and described in the plaintiff's complaint was valid and a lien upon the interest of these defendants in the premises. 2. For that his Honor erred in holding that the recording of the mortgage was constructive notice to M. V. Wood, the intestate of defendants; Rebecca A. Wood, James L. Wood and Henry M. Wood. 3. For that his Honor erred in his finding of fact in this, that he decides that the saw-mill was erected upon the mortgaged premises, there being no proof before the court to that effect, and, as a matter of fact, the mill was not so located. 4. For that his Honor's decree was otherwise contrary to the law and unsupported by the evidence."

We concur with the Circuit judge for the reasons given in his decree. We understand that the mill was built on the Ellis land, which, to that extent, at least, was used for partnership purposes, and that would seem to indicate that it was considered to be partnership property, although the legal title was at that time in two of the four partners. This view is strengthened by the fact that afterwards one-fourth of it was conveyed to L. B. Varn and the like interest to M. V. Wood. But as the third exception denies that the mill was located on the mortgaged premises, we will assume that when the note and mortgage were given, the land was the individual property of James G. and Gabriel Varn. They were, nevertheless, partners, and the land passed under the mortgage, and is bound by that instrument, if the execution of the note and mortgage by L. B. Varn alone, was, as the mortgage itself recites, the act and deed of all the partners, including the said James G. and Gabriel.

It is true that the general rule is that one partner cannot bind his copartners by a writing under seal, for the reason that such writing, importing a consideration, is considered beyond the

scope of partnership dealings, which are ordinarily carried on with negotiable paper; but there are well recognized exceptions. As we understand it, the object of the rule is to protect partners against the consequences of unauthorized acts on the part of their associates, and, if so, it would not promote, but tend to defeat that object, to apply the rule indiscriminately in all cases, whether the other partners authorized the act or not. We think it settled, in this State, that one partner may bind his copartners by deed, if the other partners are present and expressly authorize the act, or the evidence of their conduct and course of business is such as to justify the inference that such authority was given. *Fleming* v. *Dunbar*, 2 *Hill* 532; 1 *McMull.* 312; *Fant* v. *West*, 10 *Rich.* 151. In the case last cited, Judge Wardlaw said: "The single bill was not void, but if executed by one partner with sufficient authority from the other, bound both. The validity then depended upon evidence to be judged by the jury. The evidence may have authorized an inference that such authority had been given, and that was a question for the jury. The consideration of the single bill, beneficial to both parties, and the course of dealing shown by their conduct in reference to other such bills, were circumstances proper for the consideration of the jury," &c.

In the case before us, the Circuit judge held "as matter of fact that the execution of the mortgage in question was authorized by James G. Varn and Gabriel Varn, and that the same is a good, valid and satisfactory mortgage of the land;" and we think the finding was well sustained by the evidence. Both from the declarations and conduct of the partners, we are satisfied that the testator of the plaintiffs loaned the money on the credit of all the partners, and the faith that the mortgage, as represented, gave a lien on the land; that the partnership received the benefit of the money, and all the partners not only expressly authorized the execution of the note and mortgage by L. B. Varn, but acknowledged the validity of both at different times and in various ways for a series of years. Both James G. and Gabriel admitted, in their testimony, that they authorized the transaction. It is true that James G., upon his being recalled, stated that he had objected to two hundred acres on which

he lived being included, "but that Mr. Preacher and his brother stated on their return [we suppose from the execution of the papers] that they had forgotten, and included this in the mortgage." He afterwards made no objection, and wrote letters to Stroman, recognizing the mortgage as it stood, and not only signed the absolute deed of the land to Stroman when the compromise was attempted, but his wife relinquished her dower in the same.

It is urged, however, that this principle applies only to partnerships, and that it cannot apply to the mortgage on the land, which was not partnership property, and even an express verbal authority to give the note and mortgage for all the partners could not be legally executed by L. B. Varn in the firm name of "Varns & Preacher." It will be observed that although the mortgage was signed "Varns & Preacher," it purports to convey directly the individual shares of all the principals, as follows: "Know all men by these presents that we, L. B. Varn, James G. Varn, Gabriel Varn and Josiah B. Preacher (under the name and style of Varns & Preacher), have granted, bargained, sold and released, * * * to John D. Stroman, all that plantation," &c., &c. The signature, Varns & Preacher, was the manner in which all the parties, individually, chose to convey. *Varnum, Fuller & Co.* v. *Evans*, 2 *McM.* 412, and authorities.

In that case it is said: "In *Pryor* v. *Coalter*, 1 *Bail.* 517, and *Welsh* v. *Parish*, 1 *Hill* 155, there was nothing on the face of the deeds which showed that the act done was 'in the name and in behalf' of the principal. Each purported to be the act of A. B., attorney of C. D., and hence the deeds could not be the deeds of the principals. The difference between those cases and this makes a plain and obvious distinction. This, although signed and sealed by the attorney, is declared to be by the authority and in the name and in behalf of the principals, which was the same as if the attorney had said, 'By the authority of the principals and in their names and stead, I sign, seal and deliver this deed,'" &c. In this case the person who signed and sealed the mortgage did more, the parties named conveyed through him, under the name and style of "Varns & Preacher." Besides, the parties received the consideration, and in many ways ratified the mort-

gage and admitted its validity, and cannot now be heard to deny it. 3 *Kent* 48 ; *State* v. *S. & U. R. R. Company, 8 S. C.* 130.

But it is further objected that this cannot apply to the fourth of the land conveyed to M. V. Wood in 1872, after the note and mortgage were executed. The obvious answer to this is, as held by the Circuit judge, that the mortgage was recorded and Wood had at least constructive notice of it; and in addition it seems to us that it is fairly inferable from the history of the case that he had actual notice. Wood purchased the interest of Preacher, and came into the concern as his privy. Gabriel Varn, in one of his many letters to Stroman, over the signature of Varns & Wood, (October 28th, 1874,) said : " Dr. M. V. Wood bought Major J. G. Preacher's share of the mill, and we are told by three different lawyers that the mill property cannot be sold by creditors until he has been dead nine months." During the two years from 1872 until he died, in 1874, Wood most probably joined in all of the appeals which were made in the name of the new firm to Mr. Stroman for indulgence, and his widow joined in the execution of an absolute title of the land to Stroman in their effort to make a compromise.

The judgment of this court is that the judgment of the Circuit Court be affirmed.